IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SHERRI L., § | |
|   PLAINTIFF, § | |
| § | |
| V. § | CASE NO. 3:23-CV-1919-BK |
| § | |
| COMMISSIONER, SOCIAL SECURITY § | |
|  ADMINISTRATION, § | |
|   DEFENDANT. § | |

**MEMORANDUM OPINION AND ORDER**

Pursuant to 28 U.S.C. § 636 and *Special Order 3*, the Court now considers this appeal of the denial of Plaintiff's application for social security disability benefits. For the reasons below, the Commissioner's decision is **AFFIRMED**.

## I. BACKGROUND

### A. *Procedural History*

Plaintiff seeks judicial review of the Commissioner's final decision denying her application for disability insurance benefits under Title II of the Social Security Act ("Act"). Doc. 1, *passim*. Plaintiff filed her application for benefits on October 15, 2020, alleging disability beginning on January 1, 2018, based on chronic obstructive pulmonary disorder ("COPD"), carpal tunnel syndrome, fibromyalgia, and depression. Doc. 19-1 at 18. Her claim was denied at all administrative levels, and she now appeals to this Court under 42 U.S.C. § 405(g). Doc. 19-1 at 5-7; Doc. 1.

### B. Factual Background

Plaintiff was 55 years old at the time of her alleged disability onset, had two years of college education, and had past work experience as a data entry clerk, a clerical worker, and an information clerk. Doc. 19-1 at 23.

On December 29, 2017, Plaintiff was seen in the emergency room of Texas Health Huguley Hospital near Fort Worth by Dr. Qassam Mehboob. Doc. 19-1 at 367. Plaintiff's "Chief Complaint" was that she "had [a] domestic dispute at home and [complained of] chest pain and anxiety." Doc. 19-1 at 367 (capitalization removed). Plaintiff then demanded to leave and denied she was suffering from pain. Doc. 19-1 at 367. The nurse noted that Plaintiff was primarily suffering from anxiety because her "husband pointed [a] gun at her son[.]" Doc. 19-1 at 367. Her final diagnosis was for anxiety, but Plaintiff "refused treatment." Doc. 19-1 at 368.

On May 4, 2019, Plaintiff saw Dr. Laine Foran seeking a new primary care physician, laboratory testing, and a medication refill. Doc. 19-1 at 386. Plaintiff complained of left neck pain radiating up to her ear and jaw area, as well as fatigue stemming from anxiety, hypertension, and caring for her young grandson. Doc. 19-1 at 386. Plaintiff tested negative for, *inter alia*, headaches, chest pain, and neck pain. Doc. 19-1 at 386. During Plaintiff's physical exam, Dr. Foran noted that Plaintiff "is oriented to person, place, and time . . . , appears well-developed and well-nourished . . . , is active . . . , does not have a sickly appearance . . . , [and] does not appear ill." Doc. 19-1 at 387. Dr. Foran then prescribed Plaintiff, *inter alia*, an anti-depressant and an anti-inflammatory for fibromyalgia. Doc. 19-1 at 388.

On December 20, 2020, Plaintiff saw Dr. Jennifer Rzadkowolski at the emergency room for coughing and rectal bleeding. Doc. 19-1 at 424-25. She had "[n]o other complaints at this

2

time," and had no eye, chest, abdominal, back, or neck pain, or musculoskeletal tenderness or range of motion issues.  Doc. 19-1 at 425-26.

On January 13, 2022, Plaintiff went to Urgent Care of Texas ("Urgent Care") for medication refills.  Doc. 19-1 at 458.  She admitted that she was able to engage in her usual activities and denied suffering from fatigue, neurological problems (including numbness, paralysis, tingling, or weakness), musculoskeletal issues, joint pain, muscle weakness, or range of motion issues.  Doc. 19-1 at 459.  Urgent Care medical personnel also found that Plaintiff's reflexes and gait were normal.  Doc. 19-1 at 460.

On March 16, 2022, Plaintiff was seen again at Urgent Care for prescription refills.  Doc. 19-1 at 463.  She again did not list fibromyalgia or pain in her medical history, admitted to being able to engage in her usual activities, and denied having any neurological problems, chest pain, or musculoskeletal issues.  Doc. 19-1 at 463-64.  Upon examination, Plaintiff appeared comfortable and free of any musculoskeletal or neurological problems.  Doc. 19-1 at 465.  Plaintiff was seen at Urgent Care a third time on March 23, 2022, complaining of a cough and fatigue, but the rest of the findings were largely the same as her previous two visits.  Doc. 19-1 at 471-75.  The observations and results were largely the same at Plaintiff's visit to Urgent Care on March 30, 2022, for a physical examination.  Doc. 19-1 at 482-85.

On October 4, 2022, Dr. Brandon Callahan reviewed x-rays of Plaintiff's hand.  Doc. 19-1 at 440-43.  He diagnosed Plaintiff with moderate joint osteoarthritis in her left hand and mild-to-moderate joint osteoarthritis in her right hand.  Doc. 19-1 at 440-43.  He found no other significant soft tissue abnormality.  Doc. 19-1 at 440-43.  That same day, Plaintiff saw Dr. Olubukola Amudipe specifically for a "disability examination."  Doc. 19-1 at 444.  He diagnosed

3

her with carpal tunnel syndrome, hypertension, depression, panic disorder, COPD, and fibromyalgia. Doc. 19-1 at 444.

Dr. Amudipe began his analysis by attributing Plaintiff's chest pain, cough, and fatigue to her COPD, caused at least in part by her smoking "a pack a day for at least 25 years." Doc. 19-1 at 445. He also noted that Plaintiff worked at a call center but "quit her job" because she "refused to take the [COVID] vaccine." Doc. 19-1 at 445. She complained of severe pain and numbness stemming from fibromyalgia, but upon examination, Dr. Amudipe found that Plaintiff exhibited no muscular weakness, no neurological abnormalities, no acute change in gait or cognition, and no numbness. Doc. 19-1 at 445-46. He found "[t]enderness all over both hands" but no joint swelling or range of motion issues. Doc. 19-1 at 447. Plaintiff had a normal gait, strength "across all joints of upper and lower limbs," and full hand and grip strength with no muscle weakness. Doc. 19-1 at 447. Finally, Dr. Amudipe noted that "claimant's current ability to do work related activities such as sitting is unlimited. Her ability to stand, walk, lift and carry[] objects is limited," but not impossible, "due to numbness in hands and constant pain in most joints." Doc. 19-1 at 448.

That same day, Dr. Amudipe filled out a form describing Plaintiff's "ability to do work-related activities (physical)." Doc. 19-1 at 449-54. It listed the following things Plaintiff was capable of, *inter alia*: frequently lifting and carrying up to 10 pounds; occasionally lifting and carrying 11-20 pounds; sitting for 7 hours during a workday; standing for 30 minutes; walking for 15 minutes; occasionally reaching overhead, handling, fingering, feeling, and pushing or pulling various objects with both hands; and occasionally operating a motor vehicle. Doc. 19-1 at 449-54. Dr. Amudipe left blank a section on the form asking if Plaintiff suffered from any other work-related limitations. Doc. 19-1 at 454.

4

Plaintiff again presented to Urgent Care on October 25, 2022, complaining of fatigue and coughing, both of which she attributed to COVID. Doc. 19-1 at 510. She did not list fibromyalgia as part of her medical history. Doc. 19-1 at 510. She claimed to suffer from a change in strength and fatigue, stating that she could not conduct usual activities due to "fever and apparent distress." Doc. 19-1 at 511. She also complained of a decreased range of motion, joint pain, muscle weakness, and myalgia, but she did not suffer from any neurological weakness. Doc. 19-1 at 511. Physical examination revealed no musculoskeletal or neurological problems, that Plaintiff was comfortable, and that her reflexes and gait were normal. Doc. 19-1 at 511-12. Her list of diagnoses did not include fibromyalgia. Doc. 19-1 at 512.

### C. ALJ Hearing

The ALJ held a hearing on December 2, 2022. Doc. 19-1 at 32. Plaintiff, her counsel, and Vocational Expert Lisa Cox ("VE") appeared before the ALJ by phone. Doc. 19-1 at 34. Counsel began by stating "[w]e believe the record to be complete." Doc. 19-1 at 35. Before testimony, counsel's primary argument was that Plaintiff attended the emergency room and urgent care "where she was treated for other conditions, but she did report . . . ongoing pain and fatigue." Doc. 19-1 at 36.

Plaintiff testified that she was 60 years old, earned a degree after completing two years of college, and although not currently employed, received small sums for work she does for her family. Doc. 19-1 at 36-37. Plaintiff described her last previous work mainly as data entry and typing, explaining that she only left her desk for occasional meetings and occasionally picked up boxes weighing about 20 pounds. Doc. 19-1 at 39-40. Plaintiff further testified that at her call center job before that, she worked overnight shifts where she just sat and took calls, and no lifting was involved. Doc. 19-1 at 40-41.

Plaintiff described experiencing carpal tunnel pain and "constant numbness" that was "starting to . . . generate through the rest of [her] body." Doc. 19-1 at 42. She also testified that her work became difficult because of "COPD," which she attributed to COVID, but clarified that she was "not sure what exactly what's [sic] going on." Doc. 19-1 at 43. She averred that she suffered from constant fatigue, but that prescription medication helped control her anxiety, depression, and hypertension; thus, carpal tunnel and COPD are what "primarily" affected her. Doc. 19-1 at 43-44. Plaintiff attributed her cough and fatigue to COPD but said her coughing is significantly better when she is stationary and worse when she is moving around, exercising, and playing ball with her grandson. Doc. 19-1 at 48-49.

She further explained that with joint braces, she has been able to work for the last 10 years. Doc. 19-1 at 44. She stated while her carpal tunnel caused numbness and pain "[c]onstantly," it "fluctuates some days," so she is still capable of performing "normal housework and stuff." Doc. 19-1 at 46-47. She testified that numbness, pain, and weakness in her hands made it impossible to drive, hold items for long periods, type for longer than 20 minutes, work without taking two-hour breaks, or hold a phone in the same hand for more than ten minutes. Doc. 19-1 at 47.

She testified that she cares for her grandson every day. Doc. 19-1 at 48. Indeed, she stated that she spends approximately 12 hours each day with her four-year-old grandson, "trying to take care of his needs" and doing household chores that included cooking for the household. Doc. 19-1 at 51-52. She also testified that while she struggles when using a weed trimmer, she helps her boyfriend "wash the car . . . , pull weeds, [and] work [her] garden." Doc. 19-1 at 51. However, she averred that she does not "ever know how [she's] going to feel from one day to the next, so [she] wouldn't make a good employee for anybody else at this point." Doc. 19-1 at 52-

53. When asked if she can perform her past work, she said she "can't . . . even mentally do it anymore." Doc. 19-1 at 53.

In response to direct inquiry from the VE, Plaintiff testified that she had a degree in graphic design and lithography, and previously had worked as a legal assistant, performing purely clerical tasks for the attorneys and not making any significant decisions. Doc. 19-1 at 59-62. Plaintiff also testified that, in her previous work processing loan applications, she was able to simply input data and receive feedback via computer whether she should approve or deny loans and thus exercised no discretion. Doc. 19-1 at 63-64. Plaintiff also stated that when she previously worked for the Army, she only had to answer questions, most of which she did from a "script." Doc. 19-1 at 63-64.

Plaintiff completed her testimony without any mention of her fibromyalgia or its impact on her activities of daily living.

Subsequently, in response to the ALJ's hypothetical inquiry of whether "a person of [Plaintiff's] age, education, and work history, with the ability to" lift less than ten pounds frequently and up to 20 pounds occasionally; stand and walk for six hours; sit for six hours, only occasionally leaning down or taking stairs, but never climbing ladders, rope, or scaffolding would be able to perform Plaintiff's past work, the VE testified that "the past work, both as defined and as performed, would be consistent with your hypothetical as it is." Doc. 19-1 at 69. The VE also testified that while frequent fingering and handling might "knock out the data entry clerk," Plaintiff's other two previous jobs still would be workable, such as her previous job as information clerk. Doc. 19-1 at 69-70.

### D. *ALJ Opinion*

The ALJ found that Plaintiff had not engaged in substantial gainful activity since October 15, 2020—the date of her application. Doc. 19-1 at 20. He also found she suffered from severe impairments of osteoarthritis of the first CMC joint in the bilateral upper extremities, carpal tunnel syndrome, fibromyalgia, and obesity, but that these impairments did not meet or medically equal the severity of one of the statutorily listed impairments. Doc. 19-1 at 20-22 (citing 20 C.F.R. §§ 416.920(d), 416.925, 416.926). When analyzing statutory impairments, the ALJ noted that he "considered claimant's fibromyalgia at each step of the sequential evaluation process . . . . In this case, claimant's fibromyalgia claim does not cause limitations that would preclude all work." Doc. 19-1 at 22. The ALJ then found that Plaintiff has the Residual Functional Capacity ("RFC") to perform her past work as a clerical worker or information clerk, due to its sedentary nature. Doc. 19-1 at 23-26.

## II. APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the Commissioner considers (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant's impairments are "severe"; (3) whether the claimant's impairment "meets or equals" one of the listings in the relevant regulations; (4) whether the claimant can still do her past relevant work; and (5) whether the impairment prevents the claimant from doing any other available work. *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021) (citing 20 C.F.R. § 404.1520(a)(4)). The

8

claimant bears the burden on the first four steps. *Id.* (citation omitted). The burden then shifts to the Commissioner to "prove the claimant's employability." *Id.* (citation omitted).

The Court's review "is exceedingly deferential and limited to two inquiries: whether substantial evidence supports the ALJ's decision, and whether the ALJ applied the proper legal standards when evaluating the evidence." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (quotation marks and citation omitted). The Court can neither "reweigh the evidence or substitute its judgment for the Commissioner's." *Id.* A finding that substantial evidence does not exist "is appropriate only if no credible evidentiary choices or medical findings support the decision." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (citation omitted).

### III. ANALYSIS

Plaintiff first argues that the ALJ RFC finding is not supported by substantial evidence because the record was not fully developed. Doc. 22 at 12-19. Specifically, Plaintiff contends that the ALJ erred by finding the opinion of the state agency consultant ("SAC") Olubukola Amudipe, M.D., only "partially persuasive," and by relying instead on the ALJ's "own lay interpretation of 'record overall' to craft Plaintiff's ultimate RFC, a practice known as 'playing doctor.'" Doc. 22 at 13. Upon review, the Court finds no error, however.

The RFC is an ALJ's assessment, based on all relevant evidence, of a claimant's ability to work, despite her impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). Stated differently, it is the most a claimant can do, notwithstanding her physical and mental limitations. *Id.* The RFC determination is a combined "medical assessment of an applicant's impairments with descriptions by physicians, the applicant, or others of any limitations on the applicant's ability to

work." *Hollis v. Bowen*, 837 F. 2d 1378, 1386-87 (5th Cir. 1988) (per curiam). It "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) (per curiam) (quoting SSR 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996)). The ALJ is solely responsible for assessing a claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c); *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (per curiam) (holding that the RFC determination falls solely to the ALJ, who is responsible for resolving any conflicts in the evidence).

Under the current regulations, ALJs do "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Nor must an ALJ's RFC assessment "mirror or match a medical opinion." *Robert D.D. v. Kijakazi*, No. 3:21-CV-3164-C-BN, 2022 WL 16935248, at *4 (N.D. Tex. Oct. 31, 2022) (Horan, J.) (quoting *Carson v. Comm'r of Soc. Sec.*, 2022 WL 2525438, at *7 (E.D. Tex. May 25, 2022)), *adopted by*, 2022 WL 16927799 (N.D. Tex. Nov. 14, 2022) (Cummings, J.). Further, the absence of a medical opinion "'describing the types of work that the applicant is still capable of performing . . . does not, in itself, make the record incomplete.'" *Wills v. Kijakazi*, No. 22-20609, 2023 WL 4015174, at *3 (5th Cir. June 14, 2023) (per curiam) (quoting *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)); *see also Myers v. Kijakazi*, No. 20-CV-445, 2021 WL 3012838, at *4 (W.D. Tex. July 16, 2021), *adopted by*, 2021 WL 4025993 (Sept. 3, 2021) (explaining that the law does not require a positive statement or positive evidence from a medical source indicating a claimant can perform the demands included in the RFC). Such opinions are simply one category of evidence that the ALJ considers in assessing a claimant's RFC. *Id.* (citing 20 C.F.R. § 404.1513); *see also*

20 C.F.R. § 416.913 (categories of evidence for Title XVI applications). "[W]here no medical statement has been provided, [the Court's] inquiry focuses upon whether the decision of the ALJ is supported by substantial evidence in the existing record." *Ripley*, 67 F.3d at 557.

Here, the record supports the ALJ's partial rejection of SAC's RFC findings as not being supported by the medical evidence:

> In October 2022, [Plaintiff] presented for an internal medicine exam with Dr. Olubukola [Amudipe]. She reported a history of COPD, fibromyalgia, carpal tunnel syndrome, hypertension, depression, and anxiety. Her BMI at this appointment was 31.80 and her blood pressure reading was 130/87. *On exam, she was alert, neatly dressed, and in no acute distress with appropriate emotional affect, clear lungs, normal respiratory effort, and regular heart rate and rhythm. Musculoskeletal exam showed tenderness over both hands, positive Tinel's and Phalen's sign bilaterally, and positive straight leg raise bilaterally.* Additionally, imaging showed degenerative changes of the first CMC joint bilaterally. *However, exam also showed ability to squat and rise without difficulty, normal range of motion of all joints, no joint swelling or edema, no joint line tenderness, grossly intact cranial nerves, normal sensation to light touch, full strength scores, normal gait and station, no muscle weakness or atrophy, normal muscle tone and bulk, full grip strength, and ability to ambulate without assistance*. Records from an appointment at Urgent Care of Texas in October 2022 note that the claimant reported experiencing fatigue and productive cough. Her BMI at this appointment was 30.66. *On exam, she was well developed, well nourished, comfortable, and in no acute distress. Exam also showed normal musculoskeletal findings, intact cranial nerves, normal and symmetrical reflexes, and normal gait*.

Doc. 19-1 at 24 (emphasis added; record citations omitted). The Court notes that the ALJ's RFC findings are substantially aligned with Dr. Amudipe's opinion, the only difference being that the ALJ expanded how frequently Plaintiff could perform those activities. Doc. 19-1 at 25. And as Plaintiff concedes, the record contains "exam findings showing normal grip strength, normal power, normal sensation, an ability to ambulate independently, and no muscle weakness." Doc. 22 at 14. Thus, in essence, Plaintiff appeals to this Court to "reweigh the evidence [and] substitute its judgment for the Commissioner's." *Perez*, 415 F.3d at 461. This, the Court cannot

11

do.  *See also* Whitehead, 820 F.3d at 779 (a finding of no substantial evidence "is appropriate only if no credible evidentiary choices or medical findings support the decision").

Further, the record in the case *sub judice* supports the ALJ's RFC finding that Plaintiff could perform her past sedentary work with the additional restrictions noted:

> [Plaintiff's] allegations have some support in the record, though not to the extent alleged.  The claimant alleges she is severely physically limited, and the consultative exam showed hand tenderness, positive Tinel's and Phalen's, and positive straight leg raise.  Additionally, imaging showed degenerative changes of the hands, and the records document a history of fibromyalgia and a BMI slightly above 30.  Therefore, the undersigned limited the claimant to a reduced range of light work.  That said, the evidence simply does not support limitations greater than those articulated in the residual functional capacity.  First, the records show good conservative management of the claimant's impairments.  Next, exams in the record are largely normal, showing no acute distress, normal breath sounds, clear lungs, intact cranial nerves, normal gait and reflexes, ability to squat and rise without difficulty, normal range of motion of all joints, intact sensation, full grip strength, normal muscle tone and bulk, and full[-]strength scores.  Furthermore, the claimant reported she is able to prepare simple meals, perform light household chores, drive, and shop in stores for groceries and clothing.

Doc. 19-1 at 24 (record citations omitted).

For example, the records reveal that Plaintiff recounted her medical history to Urgent Care professionals on four separate occasions.  The first three times, she did not complain of fibromyalgia or pain; in fact, she admitted that she could perform usual activities and denied feeling any numbness, paralysis, or tingling stemming from a neurological disorder.  Doc. 19-1 at 458-59, 463-65, 482-85.  The fourth time Plaintiff went to Urgent Care, roughly six weeks before her administrative hearing, she did not list fibromyalgia as part of her medical history, and the physical examination revealed that Plaintiff was "comfortable," her reflexes and gait were normal, and she was not suffering from any neurological problems.  Doc. 19-1 at 510-12.

Finally, contrary to Plaintiff's argument, the ALJ was not required to seek an additional medical opinion based on the record in this case.  *See West v. Kijakazi*, No. CV H-21-2395, 2022

WL 4137297, at *6 (S.D. Tex. Aug. 26, 2022) ("The regulations do not prohibit the ALJ from assessing [Plaintiff's] RFC based on other record evidence when he finds all medical opinions to be unpersuasive."), *adopted by*, 2022 WL 4138574 (Sept. 12, 2022).

      This is not a case where the SAC's opinions were the only evidence of Plaintiff's ability to work. *Compare Henline v. Commr., Soc. Sec. Admin.*, 3:20-CV-1944-D-BH, 2022 WL 850102, at *16 (N.D. Tex. Mar. 4, 2022) (Ramirez, J.), *adopted by*, 2022 WL 847237 (N.D. Tex. Mar. 22, 2022) (Fitzwater, J.) (reversing based on *Ripley* where the only evidence of record addressing the claimant's ability to work was the SAMC's opinion, which the ALJ largely rejected when choosing to impose *less* restrictive RFC limitations). Indeed, upon determining that the SAMCs' opinions were partially unpersuasive, the ALJ assessed Plaintiff's RFC based on other categories of evidence, including Plaintiff's medical records, which included physical examinations and self-reported medical history, and her hearing testimony. Doc. 14-1 at 26-28; *see, e.g.*, *Carson*, 2022 WL 2525438, at *7 (concluding that the ALJ did not err in finding all state agency opinions not persuasive and in formulating the RFC based on testimony, medication management, activities of daily living, and other medical evidence). And because the RFC need not "mirror or match a medical opinion," the Court cannot conclude that the ALJ erred in this respect. *See Carson*, 2022 WL 2525438, at *7.

      Finally, Plaintiff's arguments that the ALJ "failed to properly evaluate Plaintiff's subjective symptoms under SSR 16-3p," Doc. 22 at 19, are also unavailing, as they lack legal and factual foundation. Plaintiff contends that the ALJ cannot reject subjective pain complaints "solely because the available objective medical evidence does not substantiate [these] statements." Doc. 22 at 19 (quoting 20 C.F.R. § 404.1529(c)(2)). Plaintiff conveniently omits the first sentence of that statute which provides, "[i]n determining whether you are disabled, we

13

consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a); *see also* SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017) ("Under our regulations, an individual's statements of symptoms alone are not enough . . . . We must consider whether an individual's statements about the intensity, persistence, and limiting effects of his or her symptoms are consistent with the medical signs and laboratory findings of record."); *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) ("Subjective complaints of pain must also be corroborated by objective medical evidence.").

Further, the ALJ is entitled to reject any of Plaintiff's testimony if it is inconsistent with the medical records. "The ALJ must consider subjective evidence of pain, but it is within his discretion to determine the pain's disabling nature. Such determinations are entitled to *considerable deference*." *Wren v. Sullivan*, 925 F.2d 123, 128-29 (5th Cir. 1991) (emphasis added) (internal citations omitted). In *Wren*, the appellate court affirmed the ALJ's rejection of the claimant's pain claims because they were inconsistent with the objective medical records. *Id.* at 129. Similarly, here, the ALJ did take into consideration Plaintiff's pain—he simply found that Plaintiff's testimony was partially unsupported in light of the other evidence. Doc. 19-1 at 24 ("Considering the foregoing, the claimant's allegations have some support in the record, though not to the extent alleged.").

14

## IV. CONCLUSION

For the reasons outlined above, the Court concludes that the ALJ determination, and by extension, that of the Commissioner, is supported by substantial evidence. Accordingly, the Commissioner's decision is **AFFIRMED**.

**SO ORDERED** on September 27, 2024.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE